UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH RYLE, JR.,

                            Plaintiff,

v.                                                                  1:19-CV-1478
                                                                    (GTS/DJS)

REHRIG PACIFIC CO.; and MICHAEL BUSH,

                            Defendants.
_____

APPEARANCES:                                         OF COUNSEL:

HANSON LAW FIRM                             KRISTIE HALLORAN HANSON, ESQ.
  Counsel for Plaintiff
1801 Altamont Avenue
Schenectady, NY 12303

JACKSON LEWIS, P.C.                          CHRISTOPHER JOHN STEVENS, ESQ.
  Counsel for Defendants                      KRISTI RICH WINTERS, ESQ.
677 Broadway, 4th Floor
Albany, NY 12110

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this action filed by Joseph Ryle, Jr. ("Plaintiff") against

Rehrig Pacific Company and Michael Bush ("Defendants"), are the following two motions: (1)

Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief

can be granted; and (2) Plaintiff's cross-motion for leave to file an Amended Complaint. (Dkt.

Nos. 7, 10.)  For the reasons set forth below, Defendants' motion is granted, and Plaintiff's

cross-motion is denied.

I.      RELEVANT BACKGROUND

        A.      Plaintiff's Complaint

Generally, in his Complaint, Plaintiff asserts eight claims: (1) a claim of negligence resulting in personal injury based on (i) harassment, discrimination, and derogatory statements directed at him by Defendant Bush, and (ii) Defendant Rehrig's failure to take corrective action based on those statements despite being made aware of them; (2) a claim that Defendant Bush's harassment, discrimination, and derogatory statements created a nuisance that caused him to sustain personal injuries; (3) a claim that Defendant Bush's conduct towards him constituted intentional infliction of emotional distress ("IIED"); (4) a claim of slander based on defamatory oral statements that Defendant Bush made about him to other employees; (5) a claim of discrimination based on discriminatory conduct and defamatory statements by Defendant Bush that ultimately led to Plaintiff being constructively discharged; (6) a claim that Defendant Rehrig wrongfully terminated his employment in retaliation for his submission of a written complaint to the Employee Resources Department regarding Defendant Bush's conduct; (7) a claim that Defendants breached the employment contract with Plaintiff by creating a retaliatory, hostile work environment through failing to discipline employees in supervisory or management positions related to Defendant Bush's conduct; and (8) a claim that Defendants violated the Family Medical Leave Act ("FMLA") through Defendant Bush's failure to exercise due care when addressing the sensitive issues of Plaintiff's wife and his need to intermittently take leave under the FMLA.  (Dkt. No. 2 [Pl.'s Compl.].)

**B.      Parties' Briefing on Defendants' Motion to Dismiss**

**1.      Defendants' Memorandum of Law**

Generally, in their motion to dismiss, Defendants argue that Plaintiff's Complaint fails to state any plausible cause of action.  (Dkt. No. 7, Attach. 1, at 8-13 [Defs.' Mem. of Law].)

As to Plaintiff's negligence claim, Defendants argue that the Complaint does not identify any duty that Defendants owed to Plaintiff, or allege facts plausibly suggesting the other elements of breach, causation, or damages.  (*Id.* at 8.)

As to Plaintiff's nuisance claim, Defendants argue that a nuisance claim is not relevant to this action (which does not involve real property), but that, in any event, Plaintiff has not alleged facts plausibly suggesting any duty Defendants owed to Plaintiff or any of the other required elements of that claim.  (*Id.* at 9.)

As to Plaintiff's IIED claim, Defendants argue that Plaintiff has not alleged facts plausibly suggesting any of the relevant elements due to a complete lack of detail about the conduct underlying the claim, and that, in any event, such a claim is duplicative of the other more specific tort claims alleged.  (*Id.* at 9-10.)

As to Plaintiff's slander claim, Defendants argue that Plaintiff has not even alleged what the slanderous statement was and has additionally failed to allege facts plausibly suggesting any of the other required elements of that claim.  (*Id.* at 10.)

As to Plaintiff's discrimination claim, Defendants argue that Plaintiff has not alleged on what basis he was discriminated against or that he belongs to any protected class, has not alleged facts plausibly suggesting that the termination of his employment was due to discrimination, and has not even stated whether this claim was brought under federal or New York law.  (*Id.* at 11.)

As to Plaintiff's breach of contract claim, Defendants argue that Plaintiff has not alleged what provision of his employment contract was allegedly breached and has not alleged facts plausibly suggesting any of the required elements of that claim.  (*Id.* at 11-12.)

As to Plaintiff's FMLA claim, Defendants argue that Plaintiff has not clearly asserted

what right under the FMLA was violated by Defendants' conduct, and that he has not alleged

facts plausibly suggesting either an interference claim or a retaliation claim because he has not

alleged that he was denied any benefit to which he was entitled under the FMLA or that his

termination occurred under circumstances giving rise to an inference of discrimination. (*Id.* at

12-13.)

### 2.     Plaintiff's Opposition Memorandum of Law

Generally, in his opposition memorandum of law, Plaintiff argues that his Complaint

states plausible causes of action, because (a) he alleged facts plausibly suggesting that

Defendants breached their duty to provide a non-hostile work environment by ignoring his

complaints about that environment, (b) he has alleged facts to plausibly allege his claim for IIED

specifically based on the allegations of Defendants' behavior, and (c) he has alleged facts

plausibly suggesting that Defendant Bush slandered him. (Dkt. No. 10, Attach. 2, at 9 [Pl.'s

Opp'n Mem. of Law].)

### C.     Parties' Briefing on Plaintiff's Cross-Motion to File an Amended Complaint

#### 1.     Plaintiff's Memorandum of Law

Generally, Plaintiff argues that he should be permitted to amend his Complaint because

leave to do so should be freely given when justice so requires in the absence of any evidence of

bad faith, undue delay, or undue prejudice. (Dkt. No 10, Attach. 2, at 8 [Pl.'s Opp'n Mem. of

Law].)

#### 2.     Plaintiff's Proposed Amended Complaint

In his proposed Amended Complaint, Plaintiff adds his wife, Linda Ryle, as a co-Plaintiff.  (Dkt. No. 12 [Proposed Am. Compl.].)  Plaintiff also adds factual allegations to his original eight claims, and asserts eight new claims on behalf of Linda Ryle for the loss of society, services, and companionship related to the injuries alleged as a result of each of Plaintiff's eight claims.  (*Id.*)

### 3.   Defendants' Opposition Memorandum of Law

Generally, in their opposition to Plaintiff's motion to file an Amended Complaint, Defendants make two arguments: (1) Plaintiff's motion should be denied as futile because the proposed Amended Complaint, even though adding factual allegations, still does not allege facts plausibly suggesting any valid claim; and (2) Plaintiff's motion to add Linda Ryle as a co-Plaintiff should be denied because she is an improper party due to the fact that she never worked for Defendants or was in any way involved with Defendants, and because her claims for loss of consortium must stand or fall with the substantive claims on which they rely, and, as already argued, Plaintiff has not alleged facts plausibly suggesting that any of those underlying substantive claims are valid.  (Dkt. No. 13, at 5-14 [Defs.' Reply Mem. of Law].)

## II.   GOVERNING LEGAL STANDARDS

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak*, 629 F. Supp.

2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

7

show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949  (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

## III.    ANALYSIS

### A.    Whether Plaintiff's Complaint States a Claim Upon Which Relief Can Be Granted

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 7, Attach. 1, at 8-13 [Defs.' Mem. of Law].)  To those reasons, the Court adds the following analysis.

As discussed above in Part II of this Decision and Order, threadbare recitals of the elements of a cause of action and assertions without sufficient factual support are insufficient to meet even the liberal pleading standard required on a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949.  However, threadbare assertions devoid of factual support are precisely what Plaintiff's Complaint provides here.  Of note, the relevant allegations that Plaintiff makes related to his

various claims in his original Complaint are as follows: (a) from February 6, 2018, to April 4, 2019, Plaintiff was harassed and discriminated against in such a way that created a burden, nuisance, or intentional infliction of emotional distress; (b) he documented unspecified derogatory statements made about him by Defendant Bush and, on or about April 2, 2018, he submitted a written complaint to the Employee Resources Department regarding his concerns about Defendant Bush's statements; (c) on or about April 16, 2018, he received a letter stating that, as a result of the company's investigation into his complaint, Defendant Rehrig was dismissing all his claims against management and his supervisors; (d) Defendant Bush, as an employee of Defendant Rehrig and Plaintiff's supervisor, breached Plaintiff's employment contract by creating a retaliatory and hostile work environment that ultimately led to the termination of Plaintiff's employment; (e) Defendant Rehrig failed to discipline employees in supervisory or management positions; and (f) Defendant Bush was negligent in his duty as Plaintiff's supervisor to exercise due care towards Plaintiff when addressing the sensitive medical issues of Plaintiff's wife and Plaintiff's need for intermittent use of leave under the FMLA.  (Dkt. No. 2 [Pl.'s Compl.].)

Notably, nowhere in his Complaint does Plaintiff allege facts related to how he was harassed or discriminated against (other than unspecified slanderous comments by Defendant Bush), the nature of the words Defendant Bush said that he alleges are slander, the nature of the injuries or emotional distress that he suffered as a result of Defendants' conduct, what portion of his employment contract he asserts was breached by Defendants' actions, or how Defendant Bush's response to Plaintiff's wife's unspecified medical condition and his need to use FMLA leave violated the FMLA.  Without such basic factual allegations related to Plaintiff's claims, the

Court finds that the Complaint fails to plausibly suggest that Defendants are liable for any misconduct under the law.

**B.      Whether Plaintiff's Request to Amend the Complaint Should Be Denied As Futile**

After careful consideration, the Court answers the above question in the affirmative for the reasons stated in Defendants' reply memorandum of law.  (Dkt. No. 13, at 5-14 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

A court should "freely give leave [to amend a complaint] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, the Court is not required to grant leave to amend where such amendment would be futile, or, in other words, when any amendment would not be able to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Byerly v. Ithaca Coll.*, 290 F. Supp. 2d 301, 305 (N.D.N.Y. 2003) (Scullin, C.J.).  In determining whether amendments to the complaint would be futile, the Court may consider not only proposed amendments submitted by the plaintiff, but also "all possible amendments" that could be made.  *Panther Partners Inc. v. Ikanos Commications, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009).

As to his negligence claim, Plaintiff adds the following relevant factual allegations: (a) Defendants had a duty to not be negligent towards their employees; (b) Defendants breached this duty when they ignored Plaintiff's complaints about Defendant Bush's harassing and derogatory behavior, including his formal written complaint; and (c) as a result of Defendants' conduct, Plaintiff developed severe post-traumatic stress disorder ("PTSD"), anxiety, depression, and panic attacks with agoraphobia that have rendered him unable to work.  (Dkt. No. 12 [Proposed Am. Compl.].)

10

Under New York law, a negligence claim requires proof of the following three elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; and (3) an injury substantially caused by that breach. *Pasternack v. Laboratory Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015).

The Court agrees with Defendants that a duty "not to be negligent" is too broad a factual allegation to plausibly suggest the first element of a negligence claim. Construing the proposed Amended Complaint liberally, the Court finds that Plaintiff has (albeit more implicitly) alleged a slightly more defined duty of a supervisor or employer to not create a hostile work environment and to address complaints of the existence of a hostile work environment. Under New York law, "[t]he injured party must show that a defendant owed not merely a general duty to society but a specific duty to the particular claimant," and "[c]ourts traditionally fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability." *In re September 11 Litig.*, 280 F. Supp. 2d 279, 290 (S.D.N.Y. 2003) (internal quotation marks omitted); *see also Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) ("Identifying the scope of an alleged tortfeasor's duty is not something derived or discerned from an algebraic formula. Rather, it coalesces from vectored forces including logic, science, weighty competing socioeconomic policies and sometimes contractual assumptions of responsibility."). However, still, the Court is unable to find that the proposed Amended Complaint has alleged facts plausibly suggesting that Defendants owed a duty to Plaintiff.

In any event, even if the proposed Amended Complaint's factual allegations are sufficient to plausibly suggest the existence of a valid legal duty, the Court finds that the only harm that Plaintiff alleges is emotional in nature, and thus his claim is more appropriately a claim for negligent infliction of emotional distress.  (*See* Dkt. No. 12 [Pl.'s Proposed Am. Compl., alleging that, as a result of Defendants' conduct, he was diagnosed with severe PTSD, anxiety, depression, and panic attacks with agoraphobia, but alleging no physical harm or fear of physical injury].)  Courts have been reluctant to permit recovery on negligence claims based on purely emotional harms unless certain specific conditions have been met.  *Vumbaca v. Terminal One Gr. Ass'n L.P.*, 859 F. Supp. 2d 343, 374-76 (E.D.N.Y. 2012).  Such claims can be sustained only where there have been allegations plausibly suggesting either a fear of physical injury as a direct result of the alleged conduct itself or that their emotional injury is genuine and substantial as the result of "special circumstances."  *See Vumbaca*, 859 F. Supp. 2d at 375; *Ranta v. City of New York*, 14-CV-3794, 2020 WL 5043933, at *2-3 (E.D.N.Y. Aug. 26, 2020) (noting that "the New York Court of Appeals endorsed the view that, in some cases, 'an especial likelihood of genuine and serious mental distress, arising from the special circumstances . . . serves as a guarantee that the claim is not spurious'") (quoting *Johnson v. New York*, 37 N.Y.2d 378, 382 [N.Y. 1975]).  "In the absence of fear of injury, the requisite guarantees of genuineness can be provided by the shocking or severe nature of the claim itself"; "a plaintiff's uncorroborated testimony of upsetness" does not suffice to guarantee the genuineness of his allegations of emotional harm.  *Id.*; *see also Douyon v. N.Y. Med. Health Care, P.C.*, 894 F. Supp. 2d 245, 268 (E.D.N.Y. 2012) ("In the absence of fear of injury, the guarantee of genuineness can be provided by the shocking or severe nature of the claim itself or psychiatric testimony. . . . If a plaintiff is

relying on psychiatric testimony, he or she must present more than a plaintiff's uncorroborated testimony of upsetness").

Here, Plaintiff's allegations that Defendant Bush told people he was a lazy minority who was abusing the FMLA system and that Defendant Bush otherwise was harassing and derogatory towards him do not plausibly suggest either fear for his physical safety or the requisite shocking or severe conduct that has been found to constitute special circumstances by other courts. *See, e.g., Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000) (finding that negligently misdiagnosing a plaintiff with HIV was likely to constitute a special circumstance to allow for the recovery of purely emotional harm); *Ranta*, 2020 WL 5043933, at *3 (finding that wrongful conviction of a spouse or child would present a special likelihood of genuine and serious mental distress on that person's family members); *Johnson*, 37 N.Y.2d at 380 (finding special circumstances where the plaintiffs were negligently and mistakenly informed that their family member had died).

Additionally, even though Plaintiff has alleged that he was diagnosed with multiple mental impairments at an undisclosed time, has been unable to work or leave his house, and is receiving Social Security disability benefits as a result of his mental impairments (which arguably provide some corroboration for his allegations of emotional distress), the Court finds that his claim against Defendant Bush must fail because all the conduct he alleges Defendant Bush engaged in was intentional (i.e., he alleges that Defendant Bush caused his injury by making various harassing and derogatory statements). *See Trayvilla v. Japan Airlines*, 111 N.Y.S.3d 224, 225 (N.Y. App. Div. 2d Dep't 2019) (noting that allegations of intentional conduct cannot form the basis for a cause of action sounding in negligence); *Offor v. Mercy Medical Ctr.*, 98 N.Y.S.3d 69, 70 (N.Y. App. Div. 1st Dep't 2019) (dismissing claim for

negligent infliction of emotional distress where the allegations underlying the claim involved intentional rather than negligent conduct); *Santana v. Leith*, 985 N.Y.S.2d 147, 148 (N.Y. App. Div. 2d Dep't 2014) (noting that "a claim must fail, where, as here, no allegations of negligence appear in the pleadings," in a case where the allegations of conduct consisted of allegations that the defendant attacked him with a hammer while using racial and ethnic slurs, conduct that the court characterized as intentional); *Regeda v. City of New York*, 09-CV-5427, 2012 WL 7157703, at *13 (E.D.N.Y. Sept. 7, 2012) (finding that the negligent infliction of emotional distress claim should be dismissed because it was based on intentional conduct) report-recommendation adopted by 2013 WL 619567 (E.D.N.Y. Feb. 19, 2013).  As a result, the Court finds that Plaintiff has not alleged facts plausibly suggesting a claim for negligence-based infliction of emotional distress as to Defendant Bush.

As to Defendant Rehrig, the Court finds that Plaintiff has not alleged facts plausibly suggesting that Defendant Rehrig breached any duty it might have owed to Plaintiff.  Plaintiff's proposed Amended Complaint acknowledges that (a) he filed his internal complaint on April 2, 2018, and (b) he received a letter on April 16, 2018, that stated that the company had performed an investigation of his complaint and was subsequently dismissing the claims made in that complaint.  (Dkt. No. 12, at ¶¶ 29, 34, 36 [Pl.'s Proposed Am. Compl.].)  Plaintiff therefore appears to acknowledge that Defendants did in fact perform some sort of investigation into his internal complaint, even if it did not result in a favorable finding on his claims; and he does not provide any factual allegations plausibly suggesting that this investigation was deficient, pretextual, or unfair.

14

Furthermore, although the pleadings of represented plaintiffs need not be liberally construed as having been effectively amended by factual allegations contained in their memoranda of law, here, the Court notes that Plaintiff alleges in his memorandum of law that, "[u]pon information and belief, Defendant Bush was suspended on April 5, 2018 and then terminated." (Dkt. No. 10, Attach. 2, at 6 [Pl.'s Opp'n Mem. of Law].)  Given the timeline presented by Plaintiff, it therefore appears that Defendant Bush was in fact disciplined after Plaintiff made his internal complaint, although it is unclear whether the complaint was the reason for that discipline.

In short, taken together, the factual allegations of Plaintiff's proposed Amended Complaint do not plausibly suggest that Defendant Rehrig breached any duty it may have had to Plaintiff because, to the contrary, they suggest that Defendant Rehrig took various measures to address Plaintiff's concerns.   As a result, Plaintiff has not alleged facts plausibly suggesting that Defendant Rehrig breached any duty it may have owed to Plaintiff to ensure that its employees did not create a hostile work environment.

As to his claim for nuisance, Plaintiff has not added any specific factual allegations, but instead continues to allege that Defendants' harassing and discriminatory conduct created a nuisance. (Dkt. No. 12, at ¶¶ 15-17 [Proposed Am. Compl.].)  Notwithstanding the factual insufficiency of Plaintiff's pleading of this claim, the Court agrees with Defendants that such a claim is not legally cognizable based on the facts alleged.  Notably, a claim for private nuisance requires showing a substantial interference with a plaintiff's right to use and enjoy land that is intentional or negligent in origin and unreasonable in character and is caused by the defendant's actions or failure to act, while a claim for public nuisance requires a showing of a substantial

interference with a right common to the public that is created, contributed, or maintained by defendant's negligent or intentional conduct or omissions causing a particular harm to the plaintiff that is different from the harm suffered by the community at large. *Read v. Corning Inc.*, 351 F. Supp. 3d 342, 358 (W.D.N.Y. 2018). Because Plaintiff has not alleged facts regarding an interference with his right to use or enjoy land or with a right common the public, he cannot sustain a claim for either private or public nuisance.

As to his claim for IIED, Plaintiff adds the following relevant factual allegations: (a) Defendants' conduct in harassing him, discriminating against him, and making derogatory statements about him was extreme and outrageous in that it was beyond all possible bounds of decency, was atrocious, and was not of the sort of behavior that is tolerated in civilized society; (b) this conduct was intentionally taken with reckless disregard of the fact that it caused Plaintiff severe emotional distress; (c) Plaintiff's resulting emotional distress has rendered him unable to work or even leave his home; and (d) Defendant Bush told "everyone" that Plaintiff is a lazy minority drug user who was taking advantage of the FMLA. (Dkt. No. 12, at ¶¶ 20-23 [Proposed Am. Compl.].)

Under New York law, to state a claim for IIED, a plaintiff must allege facts plausibly suggesting the following four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 586 (E.D.N.Y. 2011) (quoting *Bender v. City of New York*, 78 F.3d 787, 790 [2d Cir. 1996]). As to the first element, "defendant's conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

16

utterly intolerable in a civilized community,'" and "[w]hether conduct is 'outrageous' is a matter of law to be decided by the court."  *Semper*, 786 F. Supp. 2d at 586 (quoting *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 90 [N.Y. 1983]).

Here, Plaintiff's allegations that Defendants harassed him, discriminated against him, and made derogatory comments that he was a lazy minority drug user who was taking advantage of the FMLA do not meet the high standard for stating a claim of IIED.  *See Rother v. New York State Dep't. of Corrs. and Community Supervision*, 970 F. Supp. 2d 78, 104 (N.D.N.Y. 2013) (Kahn, J.) (finding that vandalism, shunning, and threats directed at plaintiff along with a single "highly offensive, mysogynist, and demeaning" tirade, were not sufficiently outrageous); *Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 557, 564-65 (S.D.N.Y. 2012) (granting summary judgment against plaintiff on IIED claim where her supervisor and another employee repeatedly told her in front of others that she was "shit," "nothing," an animal, a "bitch," a "slut," and a "whore"); *Semper*, 786 F. Supp. 2d at 587 (noting that allegations that constitute "harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities" are generally not sufficiently outrageous to sustain a claim of IIED). Nor has Plaintiff alleged facts plausibly suggesting that these actions were taken with the specific intent to cause Plaintiff severe emotional distress.  As a result, Plaintiff's proposed amendments do not state a claim for IIED upon which relief can be granted.

As to his claim for slander, Plaintiff has added the following relevant factual allegations in his proposed Amended Complaint: (a) Defendant Bush intentionally made untrue and defamatory oral statements about him to other employees; (b) Defendant Bush would tell "anyone at the Company who would listen" that Plaintiff was "a minority lazy person" who

17

"inappropriately used the Family Leave Act to take care of his sick wife, who was not sick at all"; and (c) these statements were not true and Defendants knew they were not true.  (Dkt. No. 12, at ¶¶ 27-28 [Pl.'s Proposed Am. Compl.].)

Under New York law, to state a cause of action for slander, the plaintiff must allege facts plausibly suggesting (1) a defamatory statement of fact, (2) that is false, (3) published to a third party, (4) of and concerning the plaintiff, (5) made with the applicable level of fault on the part of the speaker, (6) that causes either special harm or constitutes slander per se, and (7) that is not protected by privilege.  *Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001).

Here, Plaintiff has not alleged facts plausibly suggesting in particular that he suffered any special harm.  Rather, the only harm Plaintiff alleges is generic "personal injuries," which the Court construes to mean the onset of the PTSD, anxiety, depressive disorder, and panic attacks with agoraphobia that he alleges were the result of Defendants' alleged negligence when harassing him.  (Dkt. No. 12, at ¶¶ 12, 30 [Pl.'s Proposed Am. Compl.].)  Unlike these emotional harms, special harm is defined as economic or pecuniary loss under New York law.  *See Thompson v. Bosswick*, 855 F. Supp. 2d 67, 76 (S.D.N.Y. 2012).  Additionally, the fact that Plaintiff alleges he is unable to work as a result of these statements does not constitute a special harm because he has not alleged facts plausibly suggesting that it was the slander itself (i.e., the spreading of those statements to others rather than the effect the words had on him personally) that caused any of his emotional injuries to the extent that he was rendered unable to work.  *See Thompson*, 855 F. Supp. 2d at 76 ("Special harm must flow directly from the injury to reputation caused by the defamation, not from the effects of defamation.").

Nor are the alleged statements sufficient to constitute defamation per se. *See Medcalf v. Walsh*, 938 F. Supp. 2d 478, 487 (S.D.N.Y. 2013) (noting that the exception from proving special harm for a statement that "tends to injure another in his or her trade, business, or profession" is limited to a statement "made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities"). Although statements that Plaintiff is "lazy" and abused FMLA leave certainly might have an impact on his reputation in the workplace, they do not go beyond his character or qualities and do not particularly implicate his fitness to perform his work. *See Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 551 (S.D.N.Y. 2011) (finding that statements that plaintiff was a liar, "a loose cannon," and "hates homosexuals" did not reflect on her competence as a fitness instructor and owner, but were merely a more general reflection on her character). Because Plaintiff has not alleged facts plausibly suggesting that he suffered a special harm, he has not stated a claim for slander upon which relief can be granted.

As to his claim for discrimination and retaliation, Plaintiff includes the following relevant factual allegations in his proposed Amended Complaint: (a) Defendant Bush intentionally discriminated against him; (b) Defendant Bush's discrimination and defamatory statements led to Plaintiff's constructive discharge; (c) Plaintiff is half African-American and was the only African-American working for Defendant at the time of his employment; (d) other employees who requested time off under the FMLA were given that time off without question; (e) Plaintiff believes that he was singled out because of his race, which is a protected classification; (f) Plaintiff made a complaint about Defendant Bush's conduct; and (g) Plaintiff was retaliated

against and forced to leave.[1]   (Dkt. No. 12, at ¶¶ 33-37 [Pl.'s Proposed Am. Compl.].)   To state

either a discrimination claim or a retaliation claim under the NYSHRL, a plaintiff must allege

facts plausibly suggesting that he suffered an adverse employment action.   *See Jackson v.*

*Battaglia*, 63 F. Supp. 3d 214, 222 (N.D.N.Y. 2014) (noting that a discrimination claim under

federal law and the NYSHRL requires a plaintiff to allege that [a] he is a member of a protected

class, [b] he is qualified for the job, [c] he suffered an adverse employment action, and [d] the

circumstances surrounding the adverse action give rise to an inference of discrimination);

*Malena v. Victoria's Secret, LLC*, 886 F. Supp. 2d 349, 261-62 (S.D.N.Y. 2012) (noting that a

retaliation claim under federal law and the NYSHRL requires plaintiff to allege that [a] he

engaged in protected activity, [b] the employer was aware of this activity, [c] the employer took

an adverse action against the plaintiff, and [d] a causal connection exists between the protected

activity and the adverse action).

---

[1]       The Court notes that, to the extent that Plaintiff Complaint or proposed Amended
Complaint could be liberally construed as asserting a federal discrimination, hostile work
environment, or retaliation claim under Title VII of the Civil Rights Act, Plaintiff has not alleged
facts plausibly suggesting that he filed a complaint regarding Defendants' conduct with the
Equal Employment Opportunity Commission ("EEOC") or received a right-to-sue letter from the
EEOC.   *See Bridgeforth v. Cntr. for Disability Servs.*, 09-CV-1435, 2012 WL 3229281, at *4
(N.D.N.Y. Aug. 6, 2012) (Kahn, J.) (finding that the plaintiff could not maintain an action under
Title VII because he could not meet the conditions precedent to suit of showing that he made any
filings with the EEOC and did not commence the action until after the EEOC filing deadline);
*Farrell v. State of New York*, 946 F. Supp. 185, 190 (N.D.N.Y. 1996) (McAvoy, C.J.) ("Timely
filing and receipt of a right-to-sue letter is a statutory pre-requisite to bringing a Title VII
claim.").   As a result, Plaintiff cannot bring a Title VII claim and the Court will construe his
Complaint and proposed Amended Complaint as asserting a claim of discrimination under New
York law.

Here, Plaintiff has not alleged facts plausibly suggesting that he suffered an adverse action sufficient to state either a discrimination claim or retaliation claim. Notably, the only discernable adverse actions alleged in the proposed Amended Complaint are (a) Defendants' denial of his request for FMLA leave, and (b) Plaintiff's "constructive discharge." As to his requests for FMLA leave, Plaintiff's bare allegations that non-African-American employees were granted FMLA leave while he was denied it are insufficient for reasons that will be discussed in detail below related to Plaintiff's FMLA claim; particularly, Plaintiff has not alleged any facts to plausibly suggest that he made a valid FMLA leave request; and failure to do so prevents this Court from determining whether he has plausibly suggested that the denial of his FMLA request was based on discrimination.

Although a constructive discharge can constitute an adverse action for the purposes of these claims, Plaintiff has failed to allege facts plausibly suggesting that he was constructively discharged. Notably, although Plaintiff alleges that Defendant Bush's harassing conduct and Defendant Rehrig's failure to remedy that conduct essentially forced him out of his job, he includes no allegations as to why this conduct constituted a constructive discharge. "Constructive discharge occurs where an 'employer, rather than discharging [an employee] directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily.'" *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 309 (N.D.N.Y. 2013) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 151-52 [2d Cir. 2003]). Notably, Plaintiff has not alleged any type of demotion, change in his job duties, or loss of benefits, or that he was facing any reasonable threat of termination. *Bader*, 985 F. Supp. 2d at 310. Indeed, Plaintiff does not allege any specific reason for his decision to leave his job other than the alleged harassing and

21

derogatory statements made by Defendant Bush, the denial of his FMLA requests, and Defendant Rehrig's failure to address his complaints.  These allegations are simply not sufficient to plausibly suggest that Defendants' conduct meets the high standard required to show a constructive discharge.  Because Plaintiff therefore has not alleged facts plausibly suggesting that he suffered any adverse employment action, he has not stated a claim for discrimination or retaliation[2] upon which relief can be granted.

As to his claims for breach of contract and/or wrongful termination, Plaintiff includes the following relevant factual allegations: (a) he submitted a written complaint about Defendant Bush's conduct on April 2, 2018, and received a letter on April 16, 2018, indicating that Defendants had investigated his complaint and dismissed all his claims; (b) Defendant Bush "breached the employment contract" by creating a retaliatory, hostile work environment, and Defendant Rehrig failed to supervise and discipline its employees; and (c) New York is an at-will employment state, but Defendants hired Plaintiff to perform certain services for them, and Plaintiff performed those services adequately.  (Dkt. No. 12, at ¶¶ 41-44, 47-51 [Pl.'s Proposed Am. Compl.].)

Under New York law, a plaintiff must plead four elements to assert a breach of contract claim: (1) the existence of a contract; (2) that the plaintiff has performed his obligations under

---

[2]      Additionally, as to any retaliation claim, Plaintiff has not alleged that any of the harassing conduct or denials of his FMLA requests were denied *after* he made his internal complaint.  The only alleged event that Plaintiff alleges occurred after he submitted that complaint is his "constructive discharge," which is based primarily on actions that predated his complaint.  Thus, Plaintiff also has not alleged facts plausibly suggesting that his complaint was the cause of his constructive discharge.

the contract; (3) that defendant failed to perform its obligations under the contract; and (4) the plaintiff was damaged as a result of the defendant's nonperformance. *E. Materials Corp. v. Mitsubishi Plastics Composites Am.*, 307 F. Supp. 3d 52, 58 (S.D.N.Y. 2018).

Here, although Plaintiff alleges that there existed a contract between him and Defendant Rehrig (despite also acknowledging his status as an at-will employee), he does not allege any facts about what the nature or terms of that contract were, or what contractual duties Defendant Rehrig owed him under such contract (i.e., whether Defendant Rehrig contracted to provide Plaintiff with a non-hostile work environment free of retaliation or to discipline employees in supervisory or management positions for certain conduct).[3] As a result, Plaintiff has not alleged facts plausibly stating a claim for breach of contract or wrongful termination.

As to his claim pursuant to the FMLA, Plaintiff has added the following relevant factual allegations in his proposed Amended Complaint: (a) he was, at all relevant times, a qualified employee pursuant to the FMLA due to having been employed by Defendant Rehrig for at least 12 months and having worked at least 1,250 hours during the twelve months prior to his request for medical leave; (b) Defendant Rehrig engaged in an industry affecting interstate commerce and employed more than 20 employees and was thus an employer under the FMLA; (c) every time Plaintiff requested time off for his wife's "significant illness," he was denied time off and berated by Defendant Bush; (d) Defendant Bush was negligent by failing to exercise due care towards Plaintiff related to addressing Plaintiff's wife's medical condition and Plaintiff's

---

[3]     Plaintiff alleges that Defendants breached "the obligation to protect their employees from their agents," but fails to allege whether or how any such obligation arose from the alleged contract.

requests for time off; and (e) Defendant Rehrig was aware of Defendant Bush's actions and did

nothing.  (Dkt. No. 12, at ¶¶ 54-59 [Proposed Am. Compl.].)  The Court therefore liberally

construes Plaintiff's proposed Amended Complaint as asserting a claim for interference with

rights under the FMLA rather than retaliation for exercising his rights under the FMLA.

To plead a claim of interference with FMLA rights, a plaintiff must allege facts plausibly

suggesting the following five elements: (1) he is an eligible employee under the FMLA; (2) the

defendant is an employer as defined by the FMLA; (3) he was entitled to take leave under the

FMLA; (4) he gave notice to the defendant of his intention to take leave; and (5) he was denied

benefits to which he was entitled under the FMLA.  *Graziadio v. Culinary Institute of Am.*, 817

F. 3d 415, 425 (2d Cir. 2016).

Here, Plaintiff has, at the very least, not alleged facts to plausibly suggest that he was

entitled to take leave under the FMLA.  The FMLA entitles an eligible employee to take leave

"in order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse,

son, daughter, or parent has a serious health condition."  *Smith v. Westchester Cty.*, 769 F. Supp.

2d 448, 466 (S.D.N.Y. 2011) (quoting 29 U.S.C. § 2612[a][1][C]).  Plaintiff alleges that his wife

had a "significant illness," but he did not provide any factual allegations to plausibly suggest that

illness was a "serious health condition" as defined by the FMLA.[4]  *See Higgins v. NYP Holdings,*

*Inc.*, 836 F. Supp. 2d 182, 193-94 (S.D.N.Y. 2011) (finding that the plaintiff failed to allege

entitlement to leave where he failed to allege that the relevant condition involved inpatient

---

[4]     The FMLA defines "serious health condition" as "an illness, injury, impairment, or
physical or mental condition that involves (a) inpatient care in a hospital, hospice, or residential
medical care facility; or (b) continuing treatment by a health care provider."  29 U.S.C. §
2611(11).

treatment or continuing care and thus his allegation that he was entitled to leave was conclusory).

Additionally, Plaintiff has not provided any factual allegations plausibly suggesting when he

made the relevant requests, whether he submitted the appropriate medical or other

documentation, or when these requests were denied or the rationale for the denial.  Without such

facts to plausibly suggest that Plaintiff made a proper request and that his wife's medical

condition was a serious health condition, Plaintiff has not plausibly suggested that Defendants'

denial of leave violated his rights under the FMLA.

As to the claims for loss of consortium newly asserted by Plaintiff's wife, the Court need

not reach the issue of whether these claims can even be properly asserted because it has found

that the causes of action underlying Plaintiff's wife's claims all must be dismissed.  *See Burns v.*

*City of Utica*, 2 F. Supp. 3d 283, 295 (N.D.N.Y. 2014) (Scullin, J.) ("Since the Court has granted

Defendants' motions regarding all of Plaintiff's underlying claims, the Court grants Defendants'

motion to dismiss Plaintiff Christopher Barnes' loss of consortium claims."); *Quinoy v. Pena*,

13-CV-1945, 2014 WL 1998239, at *13 (S.D.N.Y. May 14, 2014) (noting that "[a] loss of

consortium claim is a derivative action that depends on the viability of the primary cause of

action or the underlying injury").  As a result, the Court finds that it would be futile to allow

Plaintiff to amend the Complaint to add these claims on behalf of Plaintiff's wife.

In sum, because Plaintiff's proposed amendments would be futile, the Court denies

Plaintiff's cross-motion to amend his Complaint.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 7) is **<u>GRANTED</u>**; and it is

further

      **ORDERED** that Plaintiff's cross-motion to amend the Complaint (Dkt. No. 10) is

**DENIED**; and it is further

      **ORDERED** that Plaintiff's Complaint is **DISMISSED**.

Dated: October 22, 2020
      Syracuse, New York


                              Glenn T. Suddaby
                              Chief U.S. District Judge